UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LIFE SAVERS CONCEPTS ASSOCIATION OF CALIFORNIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ROAHN WYNAR, et al.,<br><br>Defendants. | Case No. 18-CV-02252-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 47 |

Plaintiffs Life Savers Concepts Association of California ("Life Savers"), Lupita Chavez, Rito Chavez, Raquel Chavez, and Esequiel Lombera (collectively, "Individual Plaintiffs") bring suit against various Doe Defendants as well as Defendant Roahn Wynar ("Wynar"), a Federal Bureau of Investigation ("FBI") agent, in his personal and official capacities in connection with an FBI investigation into Life Savers' business operations (collectively, "Defendants"). Before the Court is Wynar's motion to dismiss the first amended complaint. ECF No. 47 ("Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS in Part and DENIES in Part Wynar's motion to dismiss.

## I. BACKGROUND

### A. Factual Background

1

Case No. 18-CV-02252-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

In July 2012, Life Savers was founded, incorporated as a North Carolina corporation, and then registered with the California Secretary of State to do intrastate business in California. ECF No. 44 ("first amended complaint," or "FAC") at ¶¶ 1-2. Life Savers did business by entering into membership agreements with homeowners. *Id.* at ¶ 3. Members transferred and assigned to Life Savers members' claims relating to their home loans so that Life Savers could bring suit against lenders seeking to foreclose on members' homes. *Id.* at ¶ 6. Most of the members also executed grant deeds that transferred to Life Savers a 5% ownership interest in members' real property securing their home loans. *Id.* at ¶ 3. Between March 29, 2013 and December 10, 2015, Life Savers assigned all of its required rights to Larry Brown. *Id.* at ¶¶ 4-5. "Based on these assignments, Brown claims to hold a 5 percent ownership interest in each of the properties that secured the home loans of the members." *Id.* at ¶ 5. The Office of the Monterey County District Attorney and the FBI have investigated Life Savers for fraud since at least 2014. *Id.* at ¶ 7. Individual Plaintiffs Lupita, Rito, Raquel, and Esequiel[1] are alleged to be Life Savers' employees. *Id.* at ¶¶ 20, 24-25.

The Court first discusses the FBI's execution of a search warrant at Life Savers' Sunnyvale office, then discusses Wynar's subsequent contact with Life Savers' Members.

### 1. FBI's Execution of a Search Warrant

On the morning of July 11, 2017, Wynar and several other FBI agents executed a search warrant on Life Savers' Sunnyvale, California office. *Id.* at ¶ 19. Wynar knocked on the door to Life Saver's office. *Id.* at 20. Plaintiffs Lupita, Rito, and Raquel, "who all reside in the adjoining living quarters were dressing or still in bed." *Id.* at ¶ 20. Eventually, Raquel answered the door. Wynar and the FBI team entered the building and proceeded to attempt to open office doors, which were locked. *Id.* at ¶ 21. Wynar asked Raquel why the doors were locked and who was present in the building. *Id.* at ¶ 21. Raquel answered that the office doors were locked because Life Savers opened at 11:00 a.m., and it was only around 9:30 a.m. when Wynar arrived with his team.

---

[1] The Court refers to Individual Plaintiffs by their first names because 3 of the 4 Individual Plaintiffs share a last name.

2
Case No. 18-CV-02252-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

*Id.* at ¶ 21. Raquel also informed Wynar that there were 3 more people in the back rooms. *Id.* Wynar asked Raquel why Raquel was sleeping in Life Savers' office, to which Raquel replied that all the Individual Plaintiffs had resided at the office for about 3 years. *Id.* at ¶ 22.

At that point, 30 FBI agents with guns drawn entered the office, and Wynar told Raquel that the FBI was there to execute a "search warrant for documents and computers related to Life Savers." *Id.* at ¶ 23. Wynar stated that he would give Raquel a copy of the search warrant later. *Id.* Wynar asked for keys to all the offices, and Raquel complied. *Id.* at ¶ 24. Afterwards, "Wynar grabbed Esequiel Lombera with great force, pushed him against the wall with force, twisted his arm, searched and handcuffed him with his hands behind his back and ordered him to face the wall." *Id.* Wynar also grabbed Rito, twisted Rito's hands and handcuffed Rito with Rito's hands behind his back, and ordered Rito to face the wall. *Id.* At that point in time, Plaintiffs allege that 20 more agents entered the Life Savers office with guns drawn and began to search the offices. *Id.*

The FBI prevented any of the Individual Plaintiffs from leaving, kept Rito and Esequiel handcuffed and facing the wall, and prevented the employees from using their cellphones or the office phones. *Id.* at ¶ 26. None of the Individual Plaintiffs were Mirandized. *Id.* Raquel asked to use the bathroom, but Wynar told Raquel to wait. Raquel asked to use the bathroom twice more, and on the third request, which was "nearly one hour from the first request," Wynar allowed Raquel to use the bathroom. *Id.* By that point, Rito and Esequiel had been handcuffed for over 30 minutes. *Id.*

Soon after, Wynar uncuffed Rito and Esequiel and had all the Individual Plaintiffs go to the front desk with Wynar and "Arlette," an Internal Revenue Service ("IRS") agent. *Id.* at ¶ 27. Wynar instructed another FBI agent to take Rito's, Lupita's, and Esequiel's identification cards. *Id.* Lupita, Rito, and Esequiel were told to leave, but Raquel was not permitted to leave and was told to sit down. *Id.* at ¶ 28. As Rito was leaving, he realized that 5 members who were coming to the Life Savers office were being questioned by FBI agents and told that Life Savers was a scam. *Id.* Raquel, who was not permitted to leave, was then interrogated by Arlette, the IRS agent, and Wynar. *Id.* at ¶¶ 29-32. Eventually, as the government agents completed their search, Wynar

3

Case No. 18-CV-02252-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

handed Raquel back her keys, the search warrant, and a Receipt for Property that documented all the items the agents seized. *Id.* at ¶ 35.

### 2. Wynar's Subsequent Contact with Life Savers' Members

In November 2017, Wynar spoke to Life Savers member Margaret Marroquin. *Id.* at ¶¶ 36-37. Wynar presented Marroquin with a copy of a check Marroquin wrote to pay her Life Savers membership dues. *Id.* at ¶ 37. Among other things, Wynar asked whether Marroquin knew how the money was being used. *Id.* Marroquin responded that she did not know how the money was used. In addition, Wynar asked Marroquin if she knew that Larry Brown was using Life Savers' members' money to buy drugs, expensive cars, jewelry for his girlfriend, trips, and alcohol. *Id.* at ¶ 38. Marroquin asked if Brown had been sued, to which Wynar responded that the government was still looking for evidence against the alleged scam before suing anyone. *Id.*

On March 28, 2018, Wynar telephoned another Life Savers member, Rosalinda Aceves, and left a voicemail. *Id.* at ¶ 40. Aceves returned Wynar's call that same day. *Id.* On the call, Wynar told Aceves that she was a victim of fraud, and Wynar also wanted to know whether Aceves gave Brown any money. *Id.* Aceves initially denied that she gave Brown any money, but Aceves eventually realized that Wynar was "referring to the money she had refinanced from her home." *Id.* at ¶ 41.

On April 8, 2018, Wynar stood outside a Life Savers meeting in San Jose, California. *Id.* at ¶ 42. Wynar approached various Life Savers' members to tell them that Life Savers was a scam, that Brown had a long criminal record, and that Brown was stealing from them. *Id.* Wynar allegedly "continued his campaign of intimidating members for several hours as members came to attend the meeting throughout the afternoon." *Id.* at 45. Wynar allegedly physically intimidated members from entering the venue, and then threatened members with arrest if members participated in the Life Savers scam. *Id.*

### B. Procedural History

On April 15, 2018, Plaintiffs filed a complaint. ECF No. 1. In addition to Roahn Wynar,

4

Case No. 18-CV-02252-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Plaintiffs' complaint stated causes of action against Alicia Cox[2] and the FBI. *Id.* On August 27, 2018, the FBI filed a motion to dismiss. ECF No. 24. On October 12, 2018, Wynar filed a motion to dismiss. ECF No. 36. On October 17, 2018, the Court entered a case management order specifying that by November 13, 2018, Plaintiffs should either oppose Wynar's and the FBI's motions to dismiss, or amend Plaintiffs' complaint. ECF No. 41 at 1. The case management order also granted Plaintiffs' motion to dismiss Defendant Alicia Cox without prejudice. *Id.* On November 16, 2018, Wynar and the FBI filed a joint reply brief noting that Plaintiffs failed to oppose the motions to dismiss or amend Plaintiffs' complaint by the Court's November 13, 2018 deadline. ECF No. 42. Later on that same day, on November 16, 2018, the parties filed a stipulation to extend the deadline for Plaintiffs to file an amended complaint to November 16, 2018. ECF No. 43. This stipulation was granted. ECF No. 45. Thus, on November 16, 2018, Plaintiffs filed a first amended complaint. ECF No. 44. In the FAC, Plaintiffs no longer named the FBI as a Defendant. *See* FAC at ¶¶ 11-16. Thus, the only remaining Defendants are Roahn Wynar and unidentified Doe Defendants.

On December 6, 2018, Wynar filed the instant motion to dismiss. ECF No. 47 ("Mot."). On January 7, 2019, Plaintiffs filed an opposition. ECF No. 53 ("Opp."). On February 12, 2019, Wynar filed a reply. ECF No. 59 ("Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

---

[2] Cox was an investigator for the Monterey County District Attorney's office. FAC at ¶ 18.

5
Case No. 18-CV-02252-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B. Leave to Amend**

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the

6

moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

In the FAC, Plaintiffs allege 2 causes of action. First, Plaintiffs allege a *Bivens* claim based on the Fourth and Fifth Amendments. Second, Plaintiffs allege a *Bivens* claim based on the First Amendment.

First, the Court first addresses Plaintiffs' *Bivens* claims against Wynar in his official capacity. Second, the Court addresses Plaintiffs' Fourteenth Amendment *Bivens* claim. Third, the Court addresses Life Savers' First, Fourth, and Fifth Amendments *Bivens* claim. Fourth, the Court discusses Individual Plaintiffs' First Amendment *Bivens* claim. Fifth, the Court analyzes Individual Plaintiffs' Fourth and Fifth Amendments *Bivens* claim.

### A. Plaintiffs' *Bivens* Claims against Wynar in his Official Capacity

In the FAC, Plaintiffs sue Wynar "individually and in his official capacity." FAC at ¶ 16. However, under Ninth Circuit law, a "Bivens action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (quoting *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987)). In fact, Plaintiffs do not challenge dismissal of Wynar in his official capacity. Opp. at 3 ("As a result of a drafting oversight, the claim against Wynar in his official capacity was not dropped in the FAC. Plaintiff concedes that this claim should be dropped.").

Thus, Plaintiffs' *Bivens* claims against Wynar in his official capacity are DISMISSED with prejudice because amendment would be futile in light of controlling law and would be unduly prejudicial to Wynar if he has to relitigate this futile claim.

### B. Plaintiffs' Fourteenth Amendment *Bivens* Claim

The FAC states that the "case is brought pursuant to . . . the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, *Bivens* [sic]." FAC at ¶ 8. However, Plaintiffs fail to allege a Fourteenth Amendment *Bivens* action. Nevertheless, had Plaintiffs pled a

7

Case No. 18-CV-02252-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Fourteenth Amendment *Bivens* claim, it would necessarily fail because the "Fourteenth Amendment applies to the states, and actions of the Federal Government and its officers are beyond the purview of the [Fourteenth] Amendment." *District of Columbia v. Carter*, 409 U.S. 418, 424 (1973).

Thus, to the extent Plaintiffs make a Fourteenth Amendment *Bivens* claim, such a claim is DISMISSED with prejudice because amendment would be futile in light of the fact that the Fourteenth Amendment applies only to state actors, and Wynar is a federal agent. Moreover, it would be unduly prejudicial to Wynar if he has to relitigate this claim, which necessarily fails under controlling law.

**C. Live Savers' *Bivens* Claims under the First, Fourth, and Fifth Amendments**

Wynar argues that the instant case presents a new context in which a *Bivens* claim is made—allowing a corporation to bring a *Bivens* action for alleged actions against its employees or members—for which special factors counsel against implying a *Bivens* remedy. Plaintiffs argue that *Bivens* is directly applicable here to provide a remedy because Wynar "presents no basis for finding that the Plaintiffs' . . . claims present a 'new context.'" Opp. at 4.

The United States Supreme Court has recognized that an implied cause of action may be available to plaintiffs who would otherwise have no statutory redress against federal officials who violated plaintiffs' constitutional rights. In *Bivens*, the United States Supreme Court found that "'violation of [the Fourth Amendment] by a federal agent . . . g[ave] rise to a cause of action for damages' against a Federal Government employee." *Minneci v. Pollard*, 565 U.S. 118, 120 (2012) (quoting *Bivens v. Six Unknown fed. Narcotics Agents*, 403 U.S. 388, 389 (1971)). In making this finding, the United States Supreme Court "created a remedy for violations of constitutional rights committed by federal officials acting in their individual capacities." *Consejo*, 482 F.3d at 1173. The United States Supreme Court has recognized that this "freestanding damages remedy for a claimed constitutional violation" is far from automatic. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

The United States Supreme Court has recognized implied *Bivens* causes of action for

8

Case No. 18-CV-02252-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

damages against federal employees for only three types of constitutional violations: (1) police search and seizure in violation of the Fourth Amendment, *see Bivens*, 403 U.S. 388; (2) gender discrimination by a Congressman in violation of the Fifth Amendment for an employee not covered by Title VII, *see Davis v. Passman*, 442 U.S. 228 (1979); and (3) deliberate indifference toward a prisoner in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980); *see also Minneci*, 565 U.S. at 124-25. In each of these cases, the United States Supreme Court allowed a *Bivens* remedy because the United States Supreme Court found that the plaintiffs had no other meaningful remedies for the constitutional violations they had suffered. *Id.* "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [United States Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).

However, the United States Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857. "This is in accord with the [United States Supreme] Court's observation that it has 'consistently refused to extend *Bivens* to any new context or new category of defendants." *Id.* (quoting *Correctional Servs., Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). *Abbasi* clarified the "proper test for determining whether a case presents a new *Bivens* context." 137 S. Ct. at 1859. First, "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Id.* The United States Supreme Court gave non-exhaustive examples of how a case might be meaningfully different from prior United States Supreme Court cases:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

Second, if the case presents a new *Bivens* context, a *Bivens* remedy will not be available if

9

Case No. 18-CV-02252-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

there "is an alternative remedial structure present in a certain case," which "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1858. Moreover, a *Bivens* remedy will not be available if "special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 1848 (quoting *Carlson*, 446 U.S. at 18). *Abbasi* "has not defined the phrase 'special factors counselling hesitation.' The necessary inference, though, is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. Thus, to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Id.* at 1857-58.

Here, Plaintiff Life Savers alleges *Bivens* actions based on the alleged mistreatment of its employees during an FBI search and the alleged attempts by Wynar to stop attendees at a Life Savers event in violation of the First, Fourth, and Fifth Amendments. However, upon reviewing the case law, it appears that neither the United States Supreme Court nor any other court has ever allowed a *corporation* (i.e., Life Savers) to bring a *Bivens* action on behalf of its employees under any constitutional amendment.

Specifically, none of the three cases in which the Supreme Court has found a *Bivens* remedy are analogous to the instant case. In *Bivens*, Federal Bureau of Narcotics agents entered the plaintiff's apartment and arrested plaintiff for alleged narcotics violations. The federal agents conducted a search of the apartment, and then brought the plaintiff to the federal courthouse "where he was interrogated, booked, and subjected to a visual strip search." *Bivens*, 403 U.S. at 389. The *Bivens* plaintiff, an individual, asserted that both the arrest and search were conducted without a warrant. *Id.* In *Davis*, the United States Supreme Court found a *Bivens* remedy in a gender discrimination case. *Davis*, 442 U.S. at 248-49. Lastly, in *Carlson*, the United States Supreme Court found a *Bivens* remedy in the context of deliberate indifference toward a prisoner in violation of the Eighth Amendment. *Carlson*, 446 U.S. at 16, 19.

Thus, because *Bivens*, *Davis*, and *Carlson* do not involve a corporate entity seeking to assert a *Bivens* action on behalf of employees, the instant case presents a new *Bivens* context. Per

10

*Abbasi*, the Court must now conduct an inquiry into whether there is an alternative remedial structure or whether "special factors" exist counseling against a *Bivens* remedy. 137 S. Ct. at 1848, 1858.

There are certainly other alternative remedial structures to address the alleged wrongful conduct by Wynar. The affected *individuals* could seek legal remedies, such as a *Bivens* remedy, instead of relying on their employer to assert their rights for them. In actuality, this is exactly what the Individual Plaintiffs have done regarding the alleged violations of the Individual Plaintiffs' Fourth and Fifth Amendment rights. Likewise, if Wynar was allegedly harassing and preventing Life Savers members from attending a Life Savers meeting, those affected, none of whom are Plaintiffs in the instant action, could bring a claim alleging a violation of the First Amendment.

Moreover, there exist special factors counseling hesitation at allowing a damages action to proceed with this new *Bivens* context. For instance, the United States Supreme Court has recognized that "permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Id.* at 1866 (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). Allowing corporations to sue under *Bivens* would theoretically increase government officials' exposure to litigation, thereby creating the identified chilling effect of inhibiting officials in the discharge of their duties. In addition, per *Abbasi*, the judiciary is not well-suited to weigh the costs and benefits of allowing *Bivens* remedies for corporations, which would confer the right to bring suit for damages on an entirely new class of entities. Moreover, if a corporation were allowed to bring a *Bivens* action on behalf of its employees, it is not clear what constitutional rights of its employees a corporation, which may lack those rights, may assert on its employees' behalf. *See, e.g.*, *Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d 1100, 1104 (9th Cir. 2006) ("[A] corporation is not entitled to purely personal guarantees—those rights that have been historically granted to protect individuals" (internal quotation marks omitted).). Indeed, the United States Supreme Court has similarly disallowed *Bivens* actions against supervisors for the "unconstitutional conduct of their

subordinates under a theory of *respondeat superior.*" *Iqbal*, 556 U.S. at 676.

In sum, the Court finds that allowing corporations such as Life Savers to bring *Bivens* suits on behalf of employees is a new *Bivens* context, one for which there are other alternative remedial structures and one that implicates special factors counseling hesitation at expanding the *Bivens* cause of action. Therefore, the Court DISMISSES with prejudice Plaintiff Life Savers' Fourth and Fifth Amendments *Bivens* claim (Count 1) and Life Savers' First Amendment *Bivens* claim (Count 2). Life Savers' claims under Counts 1 and 2 are dismissed with prejudice as any amendment would be futile because as a matter of law, this Court has found that a *Bivens* remedy is unavailable to a corporation, Life Savers, seeking to vindicate its employees' constitutional rights. Moreover, it would be unduly prejudicial to Defendants to relitigate claims that fail as a matter of law.

### D. Individual Plaintiffs' First Amendment *Bivens* Claims

Defendants argue that a *Bivens* remedy is unavailable to redress Individual Plaintiffs' First Amendment claim, and also argue that even if a *Bivens* remedy were available, the Individual Plaintiffs have not stated a plausible claim. Plaintiffs argue that there is Ninth Circuit authority holding that a *Bivens* remedy is available for violations of the First Amendment.

Plaintiffs are correct that before the United States Supreme Court's decision in *Abbasi*, the Ninth Circuit had recognized an individual's First Amendment *Bivens* claim in *Gibson v. United States*, 781 F.2d 1334, 1342 (9th Cir. 1986). However, in *Abbasi*, the United States Supreme Court provided a "new *Bivens* framework," which calls into question pre-*Abbasi* First Amendment cases. *Lanuza v. Love*, 899 F.3d 1019, 1027 n.5 (9th Cir. 2018). "The consensus of several district courts in the Ninth Circuit is that these pre-*Abbasi* [*Bivens* remedies for violations of the First Amendment] . . . are no longer controlling." *Sutter v. United States*, 2019 WL 1841905, at *6 n.4 (C.D. Cal. Mar. 12, 2019) (citing *Lee v. Matevousian*, 2018 WL 5603593, at *4 (E.D. Cal. Oct. 26, 2018)). Indeed, the United States Supreme Court has "never held that *Bivens* extends to First Amendment claims," casting even more doubt on the proposition that a *Bivens* remedy is available for violations of the First Amendment. *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). This

12

Case No. 18-CV-02252-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Court declines to address whether a *Bivens* remedy is available for Individual Plaintiffs' First Amendment claims at this juncture because even assuming *arguendo* that a *Bivens* remedy were available to vindicate Individual Plaintiffs' First Amendment rights, the Individual Plaintiffs have not stated plausible claims under the First Amendment.

Individual Plaintiffs' First Amendment claims center around Wynar's April 8, 2018 appearance at a Life Savers meeting where Wynar "stood outside the meeting hall and approached Life Saver members as they tried to enter the venue. [Wynar] intermittently prevented members from entering the building, standing directly in front of their path, blocking access." FAC at ¶ 55. Wynar was allegedly telling Life Savers members that Life Savers was a scam, and even threatened Life Savers members with arrest if the members participated in the Life Savers scam. *Id.* at ¶ 56. "Wynar did this in direct violation of Life Savers' members' First Amendment rights to assemble." *Id.*

However, the allegations of Wynar's interference outside the Life Savers meeting do not state a plausible claim for relief. First and foremost, the FAC does not allege that a single Individual Plaintiff was in attendance at the April 8, 2018 Life Savers meeting and was harassed by Wynar. "[A] plaintiff must have 'standing' to bring a legal claim. And a plaintiff has that standing, the [Supreme] Court has said, only if the action or omission that the plaintiff challenges has caused or will cause, the plaintiff to suffer an injury that is concrete and particularized, actual or imminent, and redress[able] by a favorable decision." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 423 (2013) (internal quotation marks omitted). Because none of the Individual Plaintiffs were alleged to be in attendance at the April 8, 2018 Life Savers meeting, none of the Individual Plaintiffs have standing to bring a First Amendment claim because none of the Individual Plaintiffs suffered any injury as a result of Wynar's alleged conduct.

The only allegations of contact between Wynar and the Individual Plaintiffs are during the July 11, 2017 search of the Life Savers' Sunnyvale office. In particular, Plaintiffs allege that "Wynar's abusive conduct [during the July 11, 2017 search] . . . exceeded Wynar's authority and deprived Plaintiffs of their rights, privileges, and immunities under the First Amendment." FAC at

13

Case No. 18-CV-02252-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

¶ 58. But a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not meet Rule 8's pleading standard. *Iqbal*, 556 U.S. at 678. Here, the pleading is unquestionably deficient. The pleading summarily concludes that Wynar's conduct deprived Plaintiffs of their First Amendment rights without explaining what rights under the First Amendment were allegedly implicated or the factual predicates underlying the alleged First Amendment deprivation.

Thus, the Court GRANTS Defendants' motion to dismiss Individual Plaintiffs' First Amendment *Bivens* claim. Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

### E. Individual Plaintiffs' *Bivens* Claim for Violations of the Fourth and Fifth Amendments

Wynar moves to dismiss all claims asserted by Life Savers and Individual Plaintiffs in the instant case based on qualified immunity. Mot. at 11. However, the Court has already dismissed Life Savers' Fourth and Fifth Amendments *Bivens* claim (Count 1) with prejudice. Moreover, the Court has already dismissed Individual Plaintiffs' First Amendment *Bivens* claim (Count 2) without prejudice. Thus, the remaining cause of action the Court has not dismissed is Individual Plaintiffs' Fourth and Fifth Amendments *Bivens* claim (Count 1). First, the Court discusses Individual Plaintiffs' Fifth Amendment *Bivens* claim, then Individual Plaintiffs' Fourth Amendment *Bivens* claim.

#### 1. Individual Plaintiffs' *Bivens* Claim for Violation of the Fifth Amendment

First, the FAC has failed to adequately plead a Fifth Amendment *Bivens* claim as to each Individual Plaintiff. Specifically, the FAC does not describe any violations of Individual Plaintiffs' Fifth Amendment rights. For instance, there are no allegations that the federal government denied Individual Plaintiffs equal protection of the laws. *See Davis v. Passman*, 442 U.S. 228, 235 (1979) ("[T]his Court has held that the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws" (internal quotation marks

omitted).). Nor are there any allegations that Individual Plaintiffs were being coerced into making self-incriminating statements. Though the FAC alleges that none of the Individual Plaintiffs were Mirandized, the United States Supreme Court has held that an individual is not in "custody for the purposes of Miranda until [a police officer] arrested him." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). Here, Plaintiffs vaguely allege the legal conclusion that Individual Defendants were subject to "false arrest." FAC at ¶ 50. However, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams*, 355 F.3d at 1183. Plaintiffs' scant allegations in the FAC do not show that any Individual Plaintiff was subject to false arrest, especially in view of United States Supreme Court precedent holding that it is reasonable to handcuff and detain an individual present during a police raid for two to three hours without the detention rising to the level of an arrest. *Muehler v. Mena*, 544 U.S. 93, 100 (2005).

Thus, the Court DISMISSES without prejudice Individual Plaintiffs' Fifth Amendment *Bivens* claim because the FAC fails to allege a legally cognizable Fifth Amendment deprivation. Because granting Individual Plaintiffs an additional opportunity to amend the complaint to more clearly state a Fifth Amendment claim would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532. Therefore, the Court's remaining discussion focuses on qualified immunity as it relates to Individual Plaintiffs' *Bivens* claim of a violation of their Fourth Amendment rights.

**2. Individual Plaintiffs' *Bivens* Claim for Violation of the Fourth Amendment**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To determine whether a government official is entitled to qualified immunity, we ask two questions: whether the official violated a statutory or constitutional right, and whether that right was clearly established at the time of the challenged conduct." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013).

"In assessing a qualified immunity defense on a motion to dismiss, a court must 'regard all of the allegations in [the] complaint as true.'" *Hernandez v. City of San Jose*, 2017 WL 977047, at *11 (N.D. Cal. Mar. 14, 2017) (quoting *Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999)). "A court should deny a motion to dismiss on the basis of qualified immunity if the complaint 'allege[s] acts to which qualified immunity may not apply.'" *Id.* (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)). "Under this standard, in many cases it is impossible to determine based on a complaint alone that qualified immunity is warranted." *Id.* In such circumstances, a court may deny a qualified immunity defense without prejudice and after further factual development a defendant may re-raise the qualified immunity issue 'at summary judgment or at trial.'" *Id.* (quoting *Morley*, 175 F.3d at 761).

Here, Plaintiffs have adequately alleged that Wynar may have violated Individual Plaintiff Raquel's constitutional rights by, for instance, interrogating her during the search. For example, in *Ganwich v. Knapp*, the police conducted a search of a business that was under investigation for "various fraudulent practices harmful to consumers." 319 F.3d 1115, 1118 (9th Cir. 2003). There were employees present at the business when the search was being conducted. *Id.* "The officers prevented the plaintiffs from leaving the waiting room, from going to the restroom unattended, from retrieving their personal possessions, from making telephone calls, and from answering the office telephone when it rang." *Id.* In *Ganwich*, the police prevented the employees from leaving until each employee was interrogated. *Id.* at 1121. The Ninth Circuit held that the interrogations were a violation of the Fourth Amendment. *Id.* at 1121-22. Here, taking the allegations in the complaint as true, Wymar allegedly prevented Raquel from leaving even though her coworkers were being released by the police. FAC at ¶ 28. Raquel was then subject to an interrogation by Wynar and Arlette, the IRS agent. *Id.* at ¶ 30, 32. Specifically, Arlette interrogated Raquel first, asking questions like "[w]hat do you do with the money you receive from memberships" and "[w]ho distributes the money." *Id.* at ¶ 30. "Wynar noticed that Arlette had lost her patience and he took over the interrogation." *Id.* at ¶ 32. Wynar allegedly stated "[l]ook, you will be just fine if you tell us what we need to know." *Id.* at ¶ 32. Wynar also offered, "[i]f you help us we will give

16

you immunity and you will be out of this investigation." *Id.* Thus, Wynar may have violated *Ganwich* by subjecting Raquel to a forced interrogation during the execution of a search warrant.

Thus, the Court DENIES without prejudice Defendants' motion to dismiss Raquel's Fourth Amendment *Bivens* claim based on qualified immunity. It is premature at this juncture to decide whether qualified immunity applies because the factual record has not been developed. "Once an evidentiary record has been developed through discovery, defendants will be free to move for summary judgment based on qualified immunity." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016).

By contrast, as to the three other Individual Plaintiffs (Lupita, Rito, and Esequiel), the FAC fails to allege with the required particularity that Wynar's actions towards the three other Individual Defendants were unconstitutional under the Fourth Amendment. For instance, the FAC omits any mention of Lupita in the FAC's discussion of the alleged excessive force and unlawful detention. Moreover, the FAC does not provide any detail as to how long certain events lasted during the search. For instance, the FAC alleges that unspecified Individual Plaintiffs were "made to sit in one office for hours," or that "[s]ometime thereafter" Rito and Esequiel had been handcuffed, "Wynar released Rito and Esequiel and ordered all the employees to go to the front desk." *Id.* at ¶¶ 26-27. Thus, Lupita, Rito, and Esequiel have failed to plead "enough facts to state a claim to relief that is plausible on its face" as required by Rule 8. *Twombly*, 550 U.S. at 570. Therefore, in light of the failure to meet Rule 8's pleading standard, the Court DISMISSES Lupita, Rito, and Esequiel's Fourth Amendment *Bivens* claim. Because granting Lupita, Rito, and Esequiel an additional opportunity to amend the complaint to more clearly state a Fourth Amendment *Bivens* claim would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss the following claims with prejudice:

1. Life Savers and Individual Plaintiffs' *Bivens* claim against Wynar in his official capacity;
2. Life Savers and Individual Plaintiffs' *Bivens* claim against Wynar for violating Plaintiffs' Fourteenth Amendment rights;
3. Life Savers' First, Fourth, and Fifth Amendments *Bivens* claim (Counts 1 and 2).

The Court GRANTS the motion to dismiss the following claims with leave to amend:

4. Individual Plaintiffs' *Bivens* claim against Wynar in his individual capacity for violating Individual Plaintiffs' First Amendment rights (Count 2);
5. Individual Plaintiffs' *Bivens* claim against Wynar in his individual capacity for violating Plaintiffs' Fifth Amendment rights (Count 1);
6. Lupita Chavez, Rito Chavez, and Esequiel Lombera's *Bivens* claim against Wynar in his individual capacity for violating Lupita, Rito, and Esequiel's Fourth Amendment rights (Count 1).

Thus, the only claim not dismissed by this order is Raquel Chavez's *Bivens* claim against Wynar in his individual capacity for violating Raquel's Fourth Amendment rights (Count 1). Therefore, the Court DENIES without prejudice Defendants' motion to dismiss Raquel's Fourth Amendment *Bivens* claim based on qualified immunity.

Should Plaintiffs elect to file an amended complaint curing the deficiencies identified herein, Plaintiffs shall do so within 30 days. Failure to file an amended complaint within 30 days or failure to cure the deficiencies identified in this order or in Defendants' briefs will result in dismissal with prejudice of the claims dismissed in this order. Plaintiffs may not add new causes of actions or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: May 16, 2019

_____
LUCY H. KOH
United States District Judge