UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAQUEL CHAVEZ,<br><br>        Plaintiff,<br><br>v.<br><br>ROAHN WYNAR,<br><br>        Defendant. | Case No. 18-cv-02252-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>[Re: ECF No. 162] |

After six years of whittling down allegations in a once-sprawling complaint, Defendant Roahn Wynar brings this motion for judgment on the pleadings to dismiss the case's final cause of action, a *Bivens* claim alleging that Defendant unlawfully detained and questioned Plaintiff Raquel Chavez during the execution of a search warrant in violation of her Fourth Amendment rights. ECF No. 162 ("Mot."); ECF No. 169 ("Reply"). Plaintiff opposes the motion. ECF No. 167 ("Opp."). Like the instant action, *Bivens* too has been pared down in recent years, as determined by the Supreme Court's recent *Abbasi*, *Hernandez*, and *Egbert* decisions. In light of these recent decisions and after careful consideration, the Court GRANTS Defendant's motion.

**I.   BACKGROUND**

    **A.   Factual Background**

The following allegations are taken from Plaintiff's Second Amended Complaint, which the Court takes as true for this motion. ECF No. 70 ("SAC"). On the morning of July 11, 2017, at around 9:20 a.m., Wynar and other FBI agents executed a search warrant on Life Savers Concepts Association ("Life Savers") offices in Sunnyvale, California. *Id.* ¶¶ 23–25. During the search, four Life Savers employees, including Plaintiff Raquel Chavez ("Raquel") were held in the main office without access to their cell phones. *Id.* ¶¶ 35, 42. After the other three Life Savers

employees were released, Plaintiff continued to be detained.  *Id.* ¶ 54, 56.  While detained, Plaintiff was placed in a chair, prevented from leaving, and questioned by Wynar and another agent.  *Id.* ¶¶ 58–64.  Plaintiff was detained and questioned for four hours, long after the search concluded at 10:00 a.m.  *Id.* ¶ 97.

### B. Procedural Background

The SAC alleges a host of constitutional violations, but six years of litigation have pared the allegations down to a single remaining claim: Plaintiff's Fourth Amendment *Bivens* claim for unreasonable detention and interrogation.  ECF No. 84; ECF No. 121 ("SJ Order") at 25; ECF No. 140 at 5.  Specifically, the Court found at summary judgment that a triable issue of fact remained as to "whether Defendant detained Raquel incommunicado and used the threat of continued detention to coerce Raquel to submit to an interrogation, and in turn, whether Defendant's conduct violated Raquel's Fourth Amendment rights as a matter of law."  SJ Order at 14.  The Court continued "that there is a genuine dispute of material fact as to whether (1) Raquel voluntarily consented to further questioning by Defendant or whether she was ordered to stay and answer questions before she could depart; (2) the length of time that Raquel was detained after the other Plaintiffs were released; and (3) whether Raquel was held incommunicado during her further detention."  *Id.*

On September 1, 2023, Defendant filed the instant motion.  Trial is set for July 2024.

## II. LEGAL STANDARD

Under Rule 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Rule 12(c) is a vehicle for summary adjudication, but the standard is like that of a motion to dismiss."  *Tibarom NV, Inc. v. Shell Oil Prod. U.S.*, No. 3:08-cv-60-BES-VPC, 2008 WL 11404229, at *1 (D. Nev. Sept. 24, 2008) (internal quotation marks omitted).  "Judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law."  *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1036 (9th Cir. 2008) (brackets and internal quotation marks omitted).

\\

## III. DISCUSSION

In 1971, the Supreme Court recognized for the first time an implied right of action against federal officers for constitutional violations. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff Webster Bivens alleged that the officers "manacled [him] in front of his wife and children, and threatened to arrest the entire family," "searched the apartment from stem to stern," and took him "to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search." *Id.* at 389. The Court held that Bivens was entitled to sue federal agents for damages arising out of the unlawful arrest and search, in violation of his Fourth Amendment rights. *Id.* at 389–90.

Since *Bivens*, the Supreme Court has fashioned new causes of action under the Constitution only twice—first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, *see Davis v. Passman*, 442 U.S. 228 (1979); and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, see *Carlson v. Green*, 446 U.S. 14 (1980). More common though, is the Supreme Court's refusal to recognize an implied damages remedy against federal officials. *See Egbert v. Boule*, 596 U.S. 482, 486 (2022) (the Court has "declined 11 times to imply a similar cause of action for other alleged constitutional violations") (collecting cases). "Nonetheless, rather than dispense with Bivens altogether, [the Supreme Court has] emphasized that recognizing a cause of action under Bivens is 'a disfavored judicial activity.'" *Id.* at 491 (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)). "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[,] the courts must refrain from creating [it]." *Ibid.* "'[E]ven a single sound reason to defer to Congress' is enough to require a court to refrain from creating such a remedy." *Id.* (quoting *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 635 (2021).

"To inform a court's analysis of a proposed *Bivens* claim, [the Supreme Court's] cases have framed the inquiry as proceeding in two steps." *Id.* at 492. "[T]he first question a court must ask . . . is whether the claim arises in a new *Bivens* context[.]" *Abbasi*, 582 U.S. at 147. A case presents a new context if it "is different in a meaningful way from previous *Bivens* cases decided by th[e Supreme Court]." *Id.* "Second, if a claim arises in a new context, a *Bivens* remedy is

3

unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Abbasi*, 582 U.S. at 137). "While [the Supreme Court's] cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492. The Court addresses the two *Abbasi* steps in turn.

### A. New Context

The Court first addresses whether Plaintiff's claim arises in a new *Bivens* context; namely whether it "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 582 U.S. at 147. In *Abbasi*, the Supreme Court outlined the following non-exhaustive "list of differences that are meaningful enough to make a given context a new one":

> A case might differ in a meaningful way because of [1] the rank of the officers involved; [2] the constitutional right at issue; [3] the generality or specificity of the official action; [4] the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; [5] the statutory or other legal mandate under which the officer was operating; [6] the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or [7] the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 139–40. The Supreme Court's "understanding of a 'new context' is broad." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). The Supreme Court "regard[s] a context as 'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by this Court.'" *Id.* (quoting *Abbasi*, 582 U.S. at 147).

Defendant's arguments center on how the presence of a warrant affects the fifth *Abbasi* factor, legal mandate. *See* Mot. at 1. Defendant argues that in *Bivens*, "the warrantless nature of the intrusion was the central feature of that plaintiff's Fourth Amendment claim." *Id.* at 4–5. Defendant notes that here, "the alleged detention and interrogation of Plaintiff occurred during the execution of a search warrant" which "implicitly carries limited authority to detain occupants of the premises." *Id.* at 6 (citing *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). Thus, Defendant argues, because he was executing a search warrant, he was "acting, at least to some extent, under a different legal mandate than the narcotics agents in *Bivens*." *Id.* (quoting *MT by & through*

4

*Zubkova v. United States*, No. 3:22-cv-00171-BEN-KSC, 2023 WL 2468948, at *12 (S.D. Cal. Mar. 10, 2023)).

Plaintiff's response seeks primarily to distinguish two cases cited in Defendant's motion. Plaintiff argues that the Court should not consider *Massaquoi v. FBI*, No. 22-55448, 2023 WL 5426738 (9th Cir. Aug. 23, 2023), because it is unpublished and does not address legal mandate. Opp. at 4–5. Plaintiff further argues that the Court should reject *Zubkova* and a line of cases cited therein because they concern "agents [who] lied or misrepresented facts in the application for warrants" and that here, Plaintiff "is not challenging the validity of the warrant but the unlawful manner of its execution." *Id.* at 5–6.

As an initial matter, the Court will not engage in analysis of and comparison to lower court *Bivens* cases. "In assessing whether a context is 'new,' the Supreme Court has instructed us not to examine *Bivens* cases in the lower courts, but only 'the three cases in which the [Supreme] Court has implied a damages action.'" *Pettibone v. Russell*, 59 F.4th 449, 455 (9th Cir. 2023) (quoting *Egbert*, 596 U.S. at 492). Thus, the Court need not examine the facts in or make comparisons to *Massaquoi* and *Zubkova*.

Instead, the Court must compare the legal mandates of the *Bivens* officers and Wynar. In *Bivens*, plaintiff Webster Bivens alleged that following an arrest at and warrantless search of his home, he "was taken to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search." 403 U.S. at 389. Here, the SAC alleges that Plaintiff was detained and interrogated by Wynar during and after execution of the search warrant on Life Savers. *See* SAC ¶¶ 23, 97, 114. Plaintiff alleges that the "FBI agents, specifically Wynar, and including the Doe Defendants, made use of a search warrant for documents – all of which were turned over – as a pretext to conduct interrogations of individuals who were detained without any legal basis." SAC ¶ 88. The SAC further alleges that "[a]lthough the search for documents described in the search warrant was completed by approximately 10:00 a.m., FBI agents, specifically Wynar, and including the Doe Defendants, remained on site for approximately four hours during which time they detained all four plaintiffs and questioned them." *Id.* ¶ 97.

With or without a warrant, a federal agent must conduct a search in a reasonable manner as

set forth in the Fourth Amendment. However, as Defendant points out, it is well-established that the Supreme Court allows officers executing a search warrant "the limited authority to detain the occupants of the premises while a proper search is conducted." *Summers*, 452 U.S. at 705; *see also Muehler v. Mena*, 544 U.S. 93, 98 (2005) ("An officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'") (quoting *Summers*, 452 U.S. at 705 n.19). This additional authority alone is enough to show that Wynar was acting under a different legal mandate than the agents in *Bivens*, who conducted the interrogation at a courthouse and without a warrant. Because the federal agents in *Bivens* and here were both bound by the Fourth Amendment's protection against unreasonable search and seizure, the arguable extension of *Bivens* is modest at best. But the Supreme Court has held that "even a modest extension is still an extension." *Abbasi*, 582 U.S. at 147. While *Bivens* and this case do involve similar allegations of detention and interrogation and thus arguably present "'almost parallel circumstances' or a similar 'mechanism of injury,' these superficial similarities are not enough to support the judicial creation of a cause of action." *Egbert*, 596 U.S. at 495 (quoting *Abbasi*, 582 U.S. at 139). Finally, the Court notes that other factors may distinguish this case from *Bivens*, but only addresses those arguments set forth in Defendants' motion.

At the hearing, Plaintiff argued that the alleged conduct is a clear Fourth Amendment violation under *Ganwich v. Knapp*, 319 F.3d 1115 (9th Cir. 2003). Indeed, in *Ganwich*, the Ninth Circuit held in a section 1983 action that an interrogation during the execution of a search warrant was a Fourth Amendment violation. *Id.* at 1118. But the Court's job here is to evaluate whether the SAC alleges a new *Bivens* context (and specifically whether Wynar was acting under a different legal mandate than the officers in *Bivens*), not whether the SAC alleges a Fourth Amendment violation. Here, an answer to the latter question does not resolve the former; even if the alleged interrogation was a Fourth Amendment violation, that has no bearing on how the search warrant affects Wynar's legal mandate.

Because Wynar was executing a search warrant, he was acting under a different legal mandate than the *Bivens* officers, and the claim against him thus presents a new context.

6

### B. Alternative Remedy

Having found that Plaintiff's claim presents a new *Bivens* context, the Court turns to *Abbasi's* second step. This step requires the Court to "concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 582 U.S. at 136. In *Egbert*, the Court emphasized an "utmost deference" to Congress: "[i]f there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" 596 U.S. at 493 (quoting *Abbasi*, 582 U.S. at 137).

"[A]dministrative, statutory, equitable, and state law remedies" can be adequate alternative remedial structures for the purpose of a *Bivens* analysis. *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018). Alternative remedies need not "provide complete relief for the plaintiff," *Bush v. Lucas*, 462 U.S. 367, 388 (1983), because "the focus is whether the Government has put in place safeguards to prevent constitutional violations from recurring." *Egbert*, 596 U.S. at 498 (internal citation omitted). "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.*

Courts regularly find that administrative procedures for reporting alleged misconduct are adequate alternative remedial structures sufficient to foreclose *Bivens* relief. *See, e.g.*, *Egbert*, 596 U.S. at 497 (Border Patrol internal investigations of complaints are an alternative remedy); *Mejia v. Miller*, 61 F.4th 663, 669 (9th Cir. 2023) (Bureau of Land Management complaints to the "Office of Inspector General or other appropriate authority matters" provide administrative alternative remedy); *Pettibone*, 59 F.4th at 457 (reporting to the Department of Homeland Security Inspector General as an alternative remedial structure). Administrative remedies are also available for conduct involving FBI agents. *Massaquoi*, 2023 WL 5426738, at *3 ("OIG procedures are adequate alternative remedies for *Bivens* purposes" that constituted "a dispositive special factor"); *Zubkova*, 2023 WL 2468948, at *13 ("the alternative remedy available through the [Federal Tort Claims Act ("FTCA")] constitutes a special factor that forecloses Plaintiffs' *Bivens* claim").

Defendant argues that the two alternative remedies found to be available in *Massaquoi*

7

1  (OIG complaint) and *Zubkova* (FTCA claim) are available here. Plaintiff does not dispute the
2  general availability of either alternative remedy, Opp. at 9-11, but noted at the hearing that an
3  FTCA claim is no longer available to Plaintiff due to the age of the case.
4      The Court agrees with Defendant that both an FTCA claim and an OIG complaint are
5  adequate alternative remedies available to address the conduct of FBI agents such as Defendant.
6  The existence of either, or in this case both, constitutes a special factor that is reason enough for
7  the Court not to infer a new *Bivens* cause of action. *See Egbert*, 596 U.S. at 493. That an FTCA
8  claim is no longer available to Plaintiff is not relevant to the Court's analysis; all *Egbert* requires
9  of an alternative remedy is that it is "sufficient to secure an adequate level of deterrence," not that
10 each remedy is available to Plaintiff. *See id.* at 498.

        \*       \*       \*

12     Defendant has met both *Abbasi* steps. First, Defendant has shown that he was acting under
13 a different legal mandate than the officers *Bivens*, and that Plaintiff's claim is therefore a new
14 *Bivens* context. Second, Defendant shown that alternative remedies, an OIG complaint and an
15 FTCA action, are available, and each constitutes a special factor that alone is enough to limit
16 inferring a new *Bivens* cause of action. Thus, Plaintiff's *Bivens* claim fails as a matter of law.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant Roahn Wynar's motion for judgment on the pleadings is GRANTED.

Dated: February 29, 2024

_____
BETH LABSON FREEMAN
United States District Judge

8